IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| DANIEL RICKEY, SR., and ROXANN RICKEY, <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, ET AL., <br><br> Defendants. | Case No. 5:20-cv-06031-SRB |

## ORDER

Before the Court is Defendants' Motion to Dismiss Complaint (Doc. #3) and Defendant Substitute Trustee Corporation's Motion to Dismiss Complaint for Failure to State a Claim (Doc. #11). For the reasons stated below, both motions are GRANTED.

### I. BACKGROUND

This case arises from foreclosure proceedings initiated against Plaintiffs Daniel Rickey, Sr. and Roxann Rickey ("Rickeys") regarding their personal residence at 708 South 20th Street in Bethany, Missouri. On November 9, 2019, the Rickeys filed a *pro se* petition[1] in the Circuit Court of Harrison County, Missouri, alleging violations of state and federal law by the following Defendants: Ocwen Loan Servicing, LLC ("Ocwen"), PHH Mortgage Services ("PHH"), Saxon Mortgage Services, Inc. ("Saxon"), JPMorgan Chase Bank, N.A. ("Chase"), The Bank of New York Mellon Trust Company N.A. ("BNYM"), Substitute Trustee Corporation ("STC"), Novastar Financial, Inc. ("Novastar"), Mortgage Electronic Registration Systems ("MERS"), and Altisource Portfolio Solutions, NA ("Altisource"). The Rickeys seek actual damages, statutory

---

[1] The Court will hereinafter refer to this initial pleading as "complaint" in order to correspond with the terminology used in the Federal Rules of Civil Procedure.

damages, punitive damages, interest, costs of suit, and attorneys' fees and assert the following claims: (1) Count I: Breach of Contract; (2) Count II: Fraud and Misrepresentation; (3) Count III: Negligent Misrepresentation; (4) Count IV: Violations of Merchandising Practices Act; (5) Count V: Violation of Court Order and Consent Judgment; (6) Count VI: Quiet Title; (7) Count VII: Specific Performance; (8) Count VIII: Breach of Security; and (9) Count XI: Conspiracy and Violation of RICO.

Defendants Ocwen, PHH, Saxon, and Chase ("Removing Defendants") removed the case on March 5, 2020, stating this Court may exercise federal question jurisdiction over the Rickeys' RICO claim and supplemental jurisdiction over the Rickeys' state-law claims.[2] (Doc. #1, p. 3). The Removing Defendants subsequently filed a joint Motion to Dismiss Complaint on March 12, 2020 (Doc. #3), which was joined by MERS on April 1, 2020. (Doc. #10). The deadline for the Rickeys to respond to the motion to dismiss was March 26, 2020. When no response was filed, the Court issued a Show Cause Order directing the Rickeys to respond by April 15, 2020. (Doc. #9). On April 9, 2020, STC filed its own motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. #11). The Rickeys filed a *pro se* motion requesting additional time to respond to the pending motions to dismiss, which this Court subsequently granted and gave the Rickeys until April 30, 2020, to file their responses to both pending motions. (Doc. #14). When the Rickeys again failed to file a response, the Court issued another Show Cause Order on May 4, 2020, directing the Rickeys to file their responses by May 11, 2020, or face dismissal of their case. (Doc. #15). On May 7, 2020, the Rickeys filed another *pro se* motion requesting more time to respond. The Court granted that request, giving the Rickeys until May 22, 2020, to file

---

[2] The Notice of Removal notes that, at the time of removal, only the Removing Defendants had been properly joined and served by the Rickeys. (Doc. #1, ¶ 20).

2
Case 5:20-cv-06031-SRB    Document 18    Filed 05/29/20    Page 2 of 14

their responses and noting that no further extensions would be granted. (Doc. #17). As of today's date, the Rickeys have not filed a response to the motions to dismiss.

## II. LEGAL STANDARD

The Rickeys' complaint must meet the standard set out in Rule 8(a), which requires that a plaintiff plead sufficient facts to state a claim upon which relief may be granted. Fed. R. Civ. P. 8(a); *accord* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

The Court must consider all facts alleged in the complaint as true when considering a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). The Court should be especially deferential when reviewing the facts in a *pro se* complaint. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) ("A *pro se* complaint must be liberally construed . . . and *pro se* litigants are held to a lesser pleading standard than other parties[.]"). In other words, the Rickeys' complaint should be construed "in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). However, the Court should not "assume facts that are

3
Case 5:20-cv-06031-SRB    Document 18    Filed 05/29/20    Page 3 of 14

not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915.

### III. DISCUSSION

In their complaint, the Rickeys allege that they executed a Note and Deed of Trust (the "Loan") in December 2004 to purchase real property located at 708 South 20th Street, Bethany, Missouri (the "Property") for $57,800. The claims raised by the Rickeys relate to the subsequent assignment, transfer, sale, and payment of the Loan to various parties, many of which are named as defendants in this suit. Most of the Rickeys' claims relate to a loan modification agreement, specifically a balloon rider provision omitted from the initial trial loan modification ("TLM") but included in the permanent loan modification ("PLM"). The Rickeys allege that Ocwen failed to abide by the terms of the TLM and wrongfully refused to accept their loan payments, ultimately resulting in the initiation of foreclosure proceedings and forcing the Rickeys to file bankruptcy.

As a preliminary matter, it is unclear from the Rickeys' thirty-six-page complaint if each of their claims are asserted against all Defendants. Giving the *pro se* complaint both a broad and liberal construction, the Court construes each Count as a claim for relief against each Defendant (with the exception of Count V, which is solely asserted against Ocwen). Ocwen, PHH, Saxon, Chase, and MERS ("Ocwen et al.") seek dismissal of the Rickeys' entire complaint and argue the Rickeys fail to state a claim upon which relief may be granted. STC's motion similarly seeks dismissal of all Counts raised by the Rickeys.[3] Both Ocwen et al. and STC rely on Missouri substantive law in their briefs regarding the Rickeys' state law claims, and no party argues that another state's law should apply. Therefore, the Court looks to Missouri substantive law to resolve the state law issues presented.

---

[3] The record indicates Defendant BNYM, Novastar, and Altisource have not received service of process since the case's removal nor entered an appearance in this case.

4

### A. Count I: Breach of Contract

The Rickeys contend that Defendants, without specifying any particular defendant, have breached their contractual agreement with the Rickeys through various means, including the assignment, transfer, sale, and payment of the Loan to other lenders without notice, refusing to accept loan payments, failing to record all the necessary documentation related to the Loan, and failing to respond to the Rickeys' inquiries and requests for information. (Doc. #1-2, ¶¶ 61–64). To state a breach of contract claim under Missouri law, the Rickeys must allege facts showing: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Topchian*, 760 F.3d at 850 (citing *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)).

Ocwen et al. argue the Rickeys fail to identify the specific contractual terms in the Deed of Trust which have allegedly been breached and fail to allege their own performance under the terms of the Deed of Trust. STC argues the Rickeys do not allege any facts showing how STC, as a successor trustee, breached the terms of the Deed of Trust.[4] The Court agrees and finds that dismissal of Count I is appropriate. The Rickeys fail to identify the specific contractual terms or provisions which create the promises, performances, or obligations that Ocwen et al. and STC have allegedly breached. Even when ambiguities regarding the sufficiency of the complaint are resolved in the Rickeys' favor, the complaint puts forth vague, unparticularized assertions that do not give any Defendant fair notice of the specific allegations against them. *See, e.g.*, *Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all

---

[4] STC notes that its sole involvement in this matter was its appointment as the Successor Trustee under the Deed of Trust to conduct the foreclosure sale, which to date has not occurred. (Doc. #12, p. 1).

defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."). Since the Court cannot reasonably determine which specific Defendant, if any, may plausibly be found liable for breaching the terms of the Deed of Trust, dismissal of Count I without prejudice is proper.[5]  *See Iqbal*, 556 U.S. at 678 (claims have facial plausibility when the plaintiff pleads facts that allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### B. Count II: Fraud and Misrepresentation

The complaint alleges all Defendants provided the Rickeys with false and/or inaccurate information about the TLM and PLM the Rickeys entered into, specifically the alleged omission of a balloon rider provision requiring the Rickeys to pay $35,000 to finalize the PLM.  (Doc. #1-2, ¶¶ 31–32, 65–76).  The Rickeys contend the loan modification process constitutes a fraudulent "bait and switch" scheme.  Under Missouri law, the Rickeys must allege facts to support each element of their fraudulent misrepresentation claim:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (citing *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. banc 2010)). The Rickeys must also satisfy the heightened pleading standards of Rule 9(b), which "requires plaintiffs to

---

[5] The Court also observes the Rickeys seek punitive damages in Count I, which are generally not available for a breach of contract claim.  *See Kelly v. Golden*, 352 F.3d 344, 351 (8th Cir. 2003) (citing *Sands v. R.G. McKelvey Bldg. Co.*, 571 S.W.2d 726, 733 (Mo.App.1978)) ("[U]nder Missouri law punitive damages are generally not available for a breach of contract in the absence of a showing that the breach amounts to an independent tort, separate from the contractual claim, accompanied by allegations of legal malice.").

plead the who, what, when, where, and how" of the alleged fraudulent conduct. *Id.* (quoting *Summerhill v. Terminix, Inc.,* 637 F.3d 877, 880 (8th Cir.2011)); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake.").

Ocwen et al. argue the complaint fails to identify the specific assertions or representations that constitute actionable fraud and falls short of Rule 9(b)'s heightened pleading requirements. STC argues the Rickeys fail to state with sufficient particularity any allegations that specifically implicate STC in the alleged fraudulent scheme. The Court agrees. The alleged representation underlying this fraud claim is an Ocwen employee's assertion that the PLM did not contain a balloon rider provision when, in fact, it did. Since the Rickeys do not identify a false assertion by any defendant other than Ocwen, Count II is dismissed to the extent it is asserted against all other Defendants. *See Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (citation omitted) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). As for Ocwen specifically, while the representation at issue could plausibly be considered false, the Rickeys do not put forth any allegations about their reliance on that representation, how it caused their injury or claimed damages, or Ocwen's intent to defraud them, even when all the allegations in the preceding paragraphs incorporated by Count II are considered. *See Freitas*, 703 F.3d at 439 (citation omitted) (noting a plaintiff must plead "what was obtained or given up" as a result of the alleged misrepresentation). Count II is thus dismissed without prejudice.

### C. Count III: Negligent Misrepresentation

In addition to the balloon rider allegations raised in Count II, the Rickeys further allege Defendants engaged in negligent misrepresentation by "keeping inaccurate records, reporting false information to Plaintiff(s), credit reporting agencies, insurance companies and/or other individuals, entities, agencies, or organizations." (Doc. #1-2, ¶ 83). The Rickeys also allege that same conduct constitutes an "intentional[] or negligent[]" violation of the Fair Debt Collection Practices Act, Consumer Financial Protection Act, and analogous Missouri state laws. (Doc. #1-2, ¶ 83). In Missouri, the Rickeys must allege facts to support each element of their negligent misrepresentation claim:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance Leasing*, 322 S.W.3d at 134 (citation omitted) (noting that "a claim for negligent misrepresentation, unlike one for fraud, does not involve a question of intent" and is "premised on the theory that the speaker believed the information supplied was correct but was negligent in so believing.").

Ocwen et al. repeat the arguments raised in Count II, namely that the Rickeys fail to allege facts showing a misrepresentation or the Rickeys' reliance on such. Similarly, STC argues the Rickeys fail to allege facts that specifically implicate STC in this particular cause of action. The Court agrees. The Rickeys only allege that Ocwen and/or Saxon made a reportedly false statement or assertion to them, making dismissal of Count III appropriate to the extent it is raised against all other named Defendants. As to Ocwen and Saxon specifically, the Rickeys allege they were given false or misleading account statements and TLM paperwork but fail to explain

8

Case 5:20-cv-06031-SRB   Document 18   Filed 05/29/20   Page 8 of 14

how they relied on those account statements, how their reliance caused them to suffer a monetary loss, and what monetary losses they suffered as a result of those allegedly inaccurate statements. As for the Rickeys' contention that all named Defendants, either jointly or individually, violated the Fair Debt Collection Practices Act, Consumer Financial Protection Act, and analogous state laws by providing false information to various credit reporting agencies, insurance companies, and other unspecified individuals or entities, those broad and conclusory allegations are too vague to give any Defendant fair notice of the claims against them or the basis for those claims. *See Tatone*, 857 F.Supp.2d at 831; *Twombly*, 550 U.S. at 570. Accordingly, dismissal of Count III without prejudice is appropriate.

### D. Count IV: Violations of Merchandising Practices Act

In Count IV, the Rickeys repeat all their prior allegations and assert the conduct by all Defendants constitutes "wanton and willful violations of various State and Federal Merchandise Practices Acts." (Doc. #1-2, ¶ 105). The Court construes Count IV as a Missouri Merchandizing Practices Act ("MMPA") claim, premised on all Defendants' use of "fraud, untrue marketing practices, deception, malicious manipulation of material facts, concealment, suppression, or omission of facts and information, false promises and/or other acts of malicious and intentional disregard for the veracity and accuracy of the Deed of Trust, Broker's Price Opinion, [TLM], [PLM], Note, and Allonge to Note." (Doc. #1-2, ¶ 87). To state an MMPA claim, the Rickeys must allege facts demonstrating that they: (1) purchased or leased merchandise; (2) primarily for personal, family or household purposes; and (3) thereby suffered an ascertainable loss of money or property, real or personal; (4) as a result of the defendant's use of a practice declared unlawful under Mo. Rev. Stat. § 407.020. *See* Mo. Rev. Stat. § 407.025.1; *Barnes v. Fed. Home Loan Mortg. Corp.*, No. 5:12-CV-06062-DGK, 2013 WL 1314200, at *7 (W.D. Mo. Mar. 28, 2013).

Since the Rickeys' allegations sound in fraud, their MMPA claim must satisfy the heightened pleading requirements of Rule 9(b). *See Muhammad v. Pub. Storage Co.*, No. 14-0246-CV-W-ODS, 2014 WL 3687328, at *3 (W.D. Mo. July 24, 2014) (listing MMPA cases where Rule 9(b) pleading standards were applied to claims sounding in fraud).

As argued regarding the Rickeys' fraud and misrepresentation claim in Count II, Ocwen et al. and STC contend the Rickeys fail to plead with particularity the "who, what, when, where, and how" of their MMPA claim. *See Summerhill*, 637 F.3d at 880. The Court agrees. Setting aside the bare assertions and legal conclusions the Rickeys draw from their factual allegations, the complaint makes blanket accusations against all Defendants without specifying facts that sufficiently inform each Defendant of its alleged participation in the unlawful practices relating to the Deed of Trust, Broker's Price Opinion, TLM, PLM, or Note. *See Streambend Properties*, 781 F.3d at 1013. The only defendants specifically identified in the Rickeys' MMPA claim are Ocwen and Saxon, making dismissal of Count IV warranted to the extent it is raised against all other Defendants. As to the Rickeys' MMPA claim against Ocwen and Saxon, the complaint puts forth broad legal conclusions about Ocwen and Saxon's conduct but fails to allege specific facts that satisfy the Rule 9(b) standard. In turn, Count IV is dismissed without prejudice.

### E.  Count V: Violation of Court Order and Consent Judgment

The Rickeys allege that Ocwen entered a consent judgment with the U.S. Department of Justice in 2013, the terms of which expressly set forth home loan servicing agreements that the Rickeys contended have been violated by Ocwen. The Rickeys seek over $500,000 in punitive damages for Ocwen's "blatant disregard" of that consent judgment. Ocwen et al. argue that the Rickeys lack standing to bring this claim. The Court agrees. The Rickeys do not allege that they were a party to the consent judgment at issue and fail to plead facts demonstrating they are a

third-party beneficiary entitled to enforce the consent judgment. *See Pure Country, Inc. v. Sigma Chi Fraternity,* 312 F.3d 952, 958 (8th Cir. 2002) (citations omitted) (noting that "strangers to a consent decree generally do not have standing to enforce [it]" and that "[i]n order for a third party to be able to enforce a consent decree, [he] must, at a minimum, show that the parties to the consent decree not only intended to confer a benefit upon that third party, but also intended to give that third party a legally binding and enforceable right to that benefit."). Count V is thus dismissed without prejudice.

    F. **Count VI: Quiet Title**

The Rickeys allege Defendants, by falsely accusing the Rickeys of defaulting on their Loan and scheduling the Property for a foreclosure sale, have "illegitimately created a cloud on and slander of the Plaintiff(s)' title and assets." (Doc. #1-2, ¶ 116). Suits to quiet title, governed in Missouri by Mo. Rev. Stat. § 527.150.1, are statutory actions that adjudicate the titles, estates, and interests of multiple claimants to land. *Lackey v. Wells Fargo Bank, N.A.*, No. 11-1067-CV-W-DGK, 2012 WL 4801080, at *2 (W.D. Mo. Oct. 9, 2012) (citations omitted). "To state a claim for quiet title under Missouri law, a plaintiff must allege: (1) ownership of the described real estate; (2) the defendant claims title or interest in said real estate; and (3) the defendant's claim is adverse and prejudicial to the plaintiff." *Smith v. Select Portfolio Servicing, Inc.*, No. 2:16-CV-04203-NKL, 2016 WL 4942029, at *3 (W.D. Mo. Sept. 15, 2016) (citation omitted). Further, a quiet title claimant has "the burden to prove title superior to the other party, not superior to the whole world, and must prevail on the strength of its own title and not on any weakness in the title of the other party." *Id.* (quoting *Ollison v. Vill. of Climax Springs*, 916 S.W.2d 198, 203 (Mo. banc 1996)).

Ocwen et al. and STC both argue that the Rickeys fail to plead any affirmative facts about the strength of their own title, noting the complaint only includes allegations attacking the title of others.  The Court agrees.  The Rickeys present no factual allegations regarding the strength of their own title and whether it is superior to others.  Instead, they allege "Defendant(s) have filed a salvo of documents convoluting title" and that actions by various unspecified defendants have prevented the Rickeys from either refinancing or selling the Property.  (Doc. #1-2, ¶¶ 118–119).  Even when all the prior factual allegations reincorporated into Count VI are viewed as true and considered in the Rickeys' favor, there remains no factual allegations showing the superiority of their own title.  In turn, dismissal of Count VI without prejudice is appropriate.

### G.  Count VII: Specific Performance

The Rickeys, in addition to seeking the "costs, fees, attorney fees, and damages resulting from Defendant(s)['] gross breach of contract or statute," seek specific performance of the Deed of Trust, the TLM, and "acceptance of payments in accordance with" the TLM.  (Doc. #1-2, ¶ 126).  Specific performance is an equitable remedy for a breach of contract, not a cause of action, and a court may order specific performance when monetary damages would be inadequate. *Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Const., LLC*, 807 F.Supp.2d 820, 826 (E.D. Mo. 2011) (citing *Kopp v. Franks,* 792 S.W.2d 413, 419 (Mo. App. S.D. 1990)).  Ocwen et al. and STC both argue that because the Rickeys failed to adequately state their breach of contract action and fail to identify which named Defendant must tender the specific performance they demand, dismissal is appropriate.  The Court agrees.  For those reasons, Count VII is dismissed without prejudice.

### H. Count VIII: Breach of Security

The Rickeys allege all Defendants, either individually or jointly, committed a "Breach of Security as defined by RSMO § 407.1500" by providing MERS with the Rickeys' "personal, private and confidential information," which was later shared with various unnamed third parties. (Doc. #1-2, ¶ 128). Section 407.1500 defines a "breach of security" as the "unauthorized access to and authorized acquisition of personal information maintained in computerized form by a person that compromises the security, confidentiality, or integrity of the personal information." However, § 407.1500 does not create a private cause of action that may be brought by a person allegedly harmed by such a breach.[6] *Amburgy v. Express Scripts, Inc.*, 671 F.Supp.2d 1046, 1055 (E.D. Mo. 2009). Count VIII is thus dismissed with prejudice.

### I. Count IX: Conspiracy and Violation of RICO

The final claim raised by the Rickeys is all Defendants' alleged violations of federal anti-racketeering laws, namely the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The Rickeys allege Defendants "colluded for illegal and/or illicit purposes" by submitting false or fraudulent tax reports to the Internal Revenue Service relating to the valuation of the Rickeys' Property. (Doc. #1-2, ¶¶ 135–137). RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To state a RICO claim under § 1962(c), a plaintiff must plead facts establishing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

---

[6] Generally speaking, § 407.1500 is a data breach notification statute which sets forth the guidelines that a business, person, or entity must follow when maintaining or possessing records that contain the personal data of Missouri residents, as well as the procedures they must follow upon discovering a breach of security. The Missouri Attorney General has exclusive authority to bring claims against data handlers for violation of the statute. *See* Mo. Rev. Stat. § 407.1500(4); *Amburgy*, 671 F.Supp.2d at 1055.

activity." *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822–23 (8th Cir. 2015) (citation omitted).

Ocwen et al. and STC argue the Rickeys only advance conclusory legal assertions and fail to allege any facts to support each element of their RICO claim. The Court agrees. The Rickeys simply allege that Defendants "colluded for illegal and/or illicit purposes" without putting forth any facts demonstrating the plausible existence of an enterprise, much less one based on a pattern of racketeering activity. In order to establish civil liability under RICO, the Rickeys must allege facts showing a defendant directed some aspect of the operation and management of the alleged enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 183–85 (1993). The only specifically alleged conduct in the complaint is Ocwen's purported filing of a fraudulent tax form. There are no factual allegations plausibly showing that Ocwen filed the tax paperwork at issue to further the operation or management of the alleged enterprise's affairs. Count IX is dismissed without prejudice.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Ocwen et al's Motion to Dismiss Complaint (Doc. #3) is GRANTED. It is further **ORDERED** that Defendant STC's Motion to Dismiss Complaint for Failure to State a Claim (Doc. #11) is GRANTED. Count VIII is dismissed with prejudice, while all remaining Counts are dismissed without prejudice.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: May 29, 2020